## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MORROW EQUIPMENT COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JE DUNN CONSTRUCTION COMPANY, successor in interest to DUNN SOUTHEAST, INC.; DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY; and ACE FIRE UNDERWRITERS INSURANCE COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION <br> FILE NO. 1:14-cv-00063-RLV |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff Morrow Equipment Company, LLC ("Morrow"),

by and through undersigned counsel, and pursuant to this Court's Order dated June

12, 2014, hereby files its Second Amended Complaint against Defendants JE Dunn

Construction Company, successor in interest to Dunn Southeast, Inc.; Dunn

Southeast, Inc. d/b/a R.J. Griffin & Company (collectively referred to as the "JE

Dunn Defendants"); and ACE Fire Underwriters Insurance Company ("ACE")

showing the Court as follows:

## PARTIES

1.

The Plaintiff is a limited liability company organized under the laws of the State of Delaware.

2.

Defendant JE Dunn Construction Company is a corporation organized under the laws of the State of Missouri and is the successor by merger to Defendant Dunn Southeast, Inc.

3.

Defendant Dunn Southeast, Inc. d/b/a R.J. Griffin & Company was a corporation organized under the laws of the State of Georgia.

4.

Defendant ACE is a corporation organized under the laws of the State of Delaware.

## JURISDICTION AND VENUE

5.

Defendants are subject to the jurisdiction of this Court because they have consented to jurisdiction in this state and the facts and circumstances giving rise to Plaintiff's claims occurred in the State of Georgia.

6.

Venue is proper in this Court because one of the Defendants resides in
Fulton County, Georgia.

## BACKGROUND FACTS

### The Agreement

7.

Morrow is an industry leading distributor of tower cranes and construction
hoist equipment.

8.

On December 14, 2006, Morrow and Dunn Southeast. Inc. d/b/a R.J. Griffin
& Company, the predecessor in interest to JE Dunn Construction Company,
entered into an Equipment Lease Agreement ("Agreement") for the lease of a
tower crane (the "Equipment").  A true and correct copy of the Lease Agreement is
attached hereto as Exhibit "A".

9.

Upon information and belief, in or around the year 2000, JE Dunn
Construction Company acquired RJ Griffin & Company General Contractors and
then operated it as Dunn Southeast, Inc. d/b/a R.J. Griffin & Company.  In 2010,
Dunn Southeast, Inc. d/b/a R.J. Griffin & Company became JE Dunn Construction
Company, with JE Dunn Construction Company as the surviving entity.  Thus both

3

JE Dunn Defendants were involved in the facts and circumstances giving rise to Morrow's claims.

10.

Pursuant to the Agreement, the JE Dunn Defendants agreed to "be responsible for any and all loss of and/or damage to the equipment from any and every cause whatsoever during the term thereof." [*See* Exhibit A, ¶ 6]. Moreover, the JE Dunn Defendants also agreed to "...defend, indemnify and hold Morrow harmless from any and all liability arising out of the possession, use, operation, maintenance, erection, dismantling, loading, delivery, return of equipment and/or any other action or failure to act by the Lessee, its agents or employees, or for any other reason whatsoever." [*See* Exhibit A, ¶ 6].

11.

The JE Dunn Defendants were required to indemnify Morrow for liabilities incurred during the use of the Equipment, unless those liabilities were "...caused by Lessor's sole negligence or caused solely by manufacturing/design defects." [*See* Exhibit A, pg. 2, ¶ 5].

12.

In addition, the JE Dunn Defendants were also required by the Agreement to keep the Equipment "insured against all risks of loss or damage or damage from

every cause whatsoever for the value of the equipment with Morrow as Loss Payee." [*See* Exhibit A, ¶ 7].

13.

The Agreement further demanded that the JE Dunn Defendants "carry public liability insurance including contractual liability with limits of not less than $5,000,000 for … property damage…" and that Morrow be added as an additional insured on the policy. [*See* Exhibit A, ¶ 7].

14.

As required by the Agreement, the JE Dunn Defendants purchased a property insurance policy from ACE. The insurance policy was numbered 120818232 002 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "B".

15.

As confirmed by the endorsements to the Policy and the Certificate of Liability Insurance, Morrow was named as a Loss Payee under the Policy. A true and correct copy of the Certificate of Liability Insurance is attached hereto as Exhibit "C".

5

**The Accident and Notification to Defendant's Insurer**

16.

On May 21, 2008, while the JE Dunn Defendants were using the Equipment on a construction project at the Brookwood Condominiums Construction site in Atlanta, Georgia, an accident occurred. As a result of this accident, the Equipment, the building under construction, and other equipment on the construction site were damaged. A Morrow technician was also injured.

17.

Shortly after the May 21, 2008 Accident, Jim Wiethorn, an engineer from Haag Engineering Co., visited the accident site on behalf of Morrow to assess the damage to the equipment and investigate the cause of the accident.

18.

On May 23, 2008, Morrow's attorney sent formal notice of the accident to the JE Dunn Defendants' Corporate Risk Management Department, notifying the JE Dunn Defendants of Morrow's intent to seek indemnification for any and all claims arising out of the accident. A true and correct copy of the May 23, 2008 letter is attached hereto as Exhibit "D".

19.

Morrow also requested that the JE Dunn Defendants immediately notify all applicable insurers of the accident, including its commercial general liability carrier, its excess/umbrella liability carrier and its property insurance carrier.

20.

The JE Dunn Defendants informed Morrow that all of Morrow's insurance claims should be processed through its insurance broker, Lockton Companies.

21.

On June 17, 2008, a Lockton Companies' representative sent a letter to the JE Dunn Defendants confirming that it had received notice of the May 21, 2008 accident and that it had notified the adjuster of the Policy. A true and correct copy of the June 17, 2008 correspondence is attached hereto as Exhibit "E".

22.

On or about August 8, 2008, in an attempt to recover for the damage to the Equipment from the JE Dunn Defendants' property insurance company, ACE, Morrow sent two invoices to the JE Dunn Defendants in the total amount of $362,758 representing the replacement cost of the parts damaged in the accident and the labor expanded as a result of the accident. True and correct copies of the two invoices are attached hereto as Exhibit "F".

7

**The JE Dunn Defendants Retain Almost All of the Insurance Settlement They Unilaterally Negotiate with ACE**

23.

On or about May 20, 2010, Morrow learned that (1) ACE had wrongfully paid Morrow's claim as Loss Payee under the Policy directly to the JE Dunn Defendants in violation of the Agreement and the Policy; (2) Morrow also learned that the JE Dunn Defendants and ACE had negotiated the settlement of Morrow's insurance claim with one another without Morrow's involvement; and (3) that the JE Dunn Defendants had accepted a settlement amount from ACE that was substantially less than the actual damage incurred by Morrow as a result of the May 21, 2008 accident.

24.

Morrow first put the JE Dunn Defendants on notice of its claim under the Policy on May 23, 2008, just two days after the May 21, 2008 Accident.

25.

The JE Dunn Defendants apparently concluded that in their opinion the May 21, 2008 Accident was a result of Morrow's sole negligence. The JE Dunn Defendants failed to inform Morrow of their opinion for more than two (2) years.

26.

Although the JE Dunn Defendants believed that Morrow was not entitled to indemnification, they continued to negotiate Morrow's insurance claim under the Policy with ACE in 2009 and 2010.

27.

For example, on January 27, 2009, May 14, 2009, and May 18, 2009, the JE Dunn Defendants and ACE exchanged correspondence discussing the May 21, 2008 Accident and negotiating the terms of a potential settlement of Morrow's insurance claim. The JE Dunn Defendants intentionally withheld this correspondence from Morrow.

28.

The JE Dunn Defendants participated in these and other negotiations with ACE without informing Morrow. In doing so, the JE Dunn Defendants knowingly and intentionally suppressed the negotiations and the proposed terms of any settlement agreement from Morrow and failed to seek Morrow's approval of any terms thereof.

29.

Without informing Morrow, the JE Dunn Defendants accepted a settlement amount from ACE which the JE Dunn Defendants led ACE to believe was on Morrow's behalf. The terms of the settlement agreement, which the JE Dunn

9

Defendants knowingly and intentionally suppressed from Morrow, included accepting $250,978.80 to settle Morrow's insurance claim under the Policy, even though the JE Dunn Defendants knew that Morrow had suffered $362,758 in actual damages.

30.

Then on July 14, 2010, over two (2) years after the May 21, 2008 Accident, the JE Dunn Defendants informed Morrow for the first time that they believed that the May 21, 2008 Accident was a result of Morrow's sole negligence, and thus, Morrow was not entitled to indemnification under the Agreement. A true and correct copy of the July 14, 2010 letter is attached hereto as Exhibit "G".

31.

The JE Dunn Defendants also informed Morrow for the first time on July 14, 2010 that they had negotiated Morrow's claim under the Policy with ACE and had accepted $250,978.80 in damages. In addition, the JE Dunn Defendants told Morrow that they were retaining $217,898 of the settlement payment for themselves and were only remitting $30,080 to Morrow.

32.

Morrow never cashed the $30,000 check and on December 23, 2011, returned it to the JE Dunn Defendants and rejected the JE Dunn Defendants'

10

attempt to resolve the dispute over the insurance claim proceeds. A true and correct copy of the December 23, 2011 letter is attached here to as Exhibit "H".

33.

On October 22, 2012, Morrow reinformed ACE that pursuant to General Endorsement F of the Policy, Morrow was the Loss Payee and was entitled to reimbursement for the loss in value to the Equipment as a result of the May 21, 2008 accident in the amount of $362,758. A true and correct copy of the October 22, 2012 correspondence is attached hereto as Exhibit "I". ACE failed to respond to this letter.

34.

On November 30, 2012, Morrow sent a follow-up letter to ACE referencing its October 22, 2012 letter and requested that ACE send it a copy of the check that was issued to the JE Dunn Defendants in relation to Morrow's property damage claim. A true and correct copy of the November 30, 2012 correspondence is attached hereto as Exhibit "J". ACE failed to send Morrow a copy of the check in question or otherwise respond to the November 30, 2012 letter.

35.

Plaintiff made various additional demands for payment to the JE Dunn Defendants including, but not limited to, the following: By letter dated October 19, 2012, Morrow demanded that the JE Dunn Defendants pay its claim in full.

11

The JE Dunn Defendants failed to respond to this letter. A true and correct copy of the October 19, 2012 letter is attached hereto as Exhibit "K".

36.

Again, on March 6, 2013, Morrow's attorney demanded that the JE Dunn Defendants pay Morrow claim for the damage done to the Equipment in full. A true and correct copy of the March 6, 2013 letter is attached hereto as Exhibit "L".

37.

Neither the JE Dunn Defendants nor ACE have ever compensated Morrow for the damage done to the Equipment as a result of the May 21, 2008 accident.

38.

As a result of the Defendants conduct, Morrow has suffered damages in an amount to be determined at trial.

**COUNT ONE**

**CONVERSION AGAINST THE JE DUNN DEFENDANTS**

39.

Morrow hereby incorporates and re-alleges paragraph 1 through 38 above as if fully set forth herein.

12

40.

Morrow was listed as a Loss Payee under the Policy, as required by the Lease Agreement. As such, Morrow had a right to any and all payments made by ACE pursuant to Morrow's claim for the damage to the Equipment.

41.

ACE, however, paid Morrow's claim as Loss Payee under the Policy directly to the JE Dunn Defendants, upon information and belief, in the amount of $250,978.80.

42.

The JE Dunn Defendants wrongfully accepted the payment from ACE and attempted to remit $30,080 to Morrow and retain the remaining balance for themselves.

43.

Morrow returned the $30,080 to the JE Dunn Defendants and, on multiple occasions, made demands upon the JE Dunn Defendants that it be fully compensated for the damages to the Equipment.

44.

The JE Dunn Defendants have refused to compensate Morrow for the damages done to the Equipment as a result of the May 21, 2008 accident.

45.

The JE Dunn Defendants converted the $250,978.80 payment from ACE that Morrow had a legal right to possess.

46.

Morrow has been damaged in an amount to be determined at trial as a result of the JE Dunn Defendants' conversion of the funds it received in satisfaction of Morrow's insurance claim from ACE.

## **COUNT TWO**

## **BREACH OF CONTRACT AGAINST THE JE DUNN DEFENDANTS**

47.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through  46 above as if fully set forth herein.

48.

On December 14, 2006, the JE Dunn Defendants' entered into the Agreement for the lease of the Equipment.

49.

Pursuant to the Agreement, the JE Dunn Defendants were required to "…defend, indemnify and hold Morrow harmless from any and all liability arising out of the possession, use, operation, maintenance, erection, dismantling, loading, delivery, return of equipment and/or any other action or failure to act by the

14

Lessee, its agents or employees, or for any other reason whatsoever." [*See* Exhibit A, ¶ 6].

50.

The Agreement required that the JE Dunn Defendants indemnify Morrow for any and all damage suffered by the Equipment as a result of the accident that occurred on May 21, 2008, as long as that damage was not a result of Morrow's sole negligence or solely caused by a manufacturing/design defect.

51.

The May 21, 2008 Accident was caused at least in part by the JE Dunn Defendants' subcontractors' failure to appropriately monitor the climbing of the equipment; thus, it was not a result of Morrow's sole negligence or solely caused by a manufacturing/design defect. [*See* Matt Gardiner and Jim Wiethorn Expert Report dated July 1, 2014 ("Gardiner/Wiethorn Report", attached hereto as Exhibit "M"].[1]

52.

Pursuant to the Agreement, Morrow provided a service technician and the JE Dunn Defendants were responsible for climbing the crane. As a result, they subcontracted with Phoenix Crane ("Phoenix") to climb the crane. [*See* Gardiner/Wiethorn Report].

---

[1] Morrow will submit a full expert report in compliance with Federal Rule of Civil Procedure 26 during discovery.

53.

As stated in the Gardiner/Wiethorn Report, the May 21, 2008 Accident could have been averted had the Phoenix foreman, the subcontractor under the JE Dunn Defendants' supervision and control, appropriately positioned his crew members at the construction site and had the designated Phoenix crew member properly observed the Equipment. [*See* Gardiner/Wiethorn Report].

54.

The JE Dunn Defendants breached the indemnity provision of the Agreement by failing to indemnify Morrow for the damage that was done to the Equipment as a result of the May 21, 2008 accident.

55.

As a result of the JE Dunn Defendants' breach of the Agreement, Morrow has suffered damages in an amount to be determined at trial but not less than $362,758.00.

**COUNT THREE**

**FRAUD AGAINST THE JE DUNN DEFENDANTS**

56.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through 55 above as if fully set forth herein.

16

57.

By entering into the Agreement, adding Morrow as the Loss Payee under the Policy, and agreeing to handle and negotiate Morrow's claims under the Policy, the JE Dunn Defendants placed themselves in position to exercise a controlling influence over Morrow's interest in the settlement of its insurance claim under the Policy. Thus, a confidential relationship existed between Morrow and the JE Dunn Defendants.

58.

As a result of this confidential relationship, the JE Dunn Defendants had an obligation to communicate material facts about the handling of Morrow's insurance claim to Morrow.

59.

The JE Dunn Defendants were obligated to inform Morrow that they believed that the May 21, 2008 Accident was a result of Morrow's sole negligence and that it was their opinion that Morrow was not entitled to indemnification under the Agreement.

60.

Since the JE Defendants believed that the May 21, 2008 Accident was caused by Morrow's sole negligence, they should not have negotiated Morrow's insurance claim with ACE.

17

61.

The JE Dunn Defendants were also obligated to inform Morrow that they were negotiating Morrow's insurance claim under the Policy with ACE for their own benefit and that they would not involve Morrow or disclose any of the negotiations to Morrow.

62.

Between May 2008 and July 2010, the JE Dunn Defendants knowingly and intentionally failed to inform Morrow of the substance of any of the negotiations it was having with ACE.

63.

In addition, the JE Dunn Defendants also had an obligation prior to the settling Morrow's claim, to inform Morrow of the terms of ACE's offer and consult Morrow on whether those terms were acceptable to Morrow and not just to the JE Dunn Defendants.

64.

The JE Dunn Defendants were also obligated to inform Morrow that they intended on retaining the vast majority of the settlement payment from ACE for themselves. Instead, the JE Dunn Defendants knowingly and intentionally suppressed this fact from Morrow until they concluded their negotiations with ACE, accepted $250,978.80 to settle Morrow's claim without disclosing the

discussions to Morrow or involving them in any way, deducted $217,898 from the settlement amount for their own purposes, and remitted $30,080 to Morrow.

65.

The JE Dunn Defendants knowing knowingly and intentionally suppressed the foregoing material facts from Morrow.

66.

The JE Dunn Defendants intentionally induced Morrow to refrain from negotiating its insurance claim with ACE so that they could keep a vast majority of any settlement payment made by ACE for their own use.

67.

Based upon: 1) the Agreement; 2) Morrow being listed as the Loss Payee under the Policy; and 3) the confidential relationship that existed between Morrow and the JE Dunn Defendants as a result thereof, Morrow justifiably relied upon the JE Dunn Defendants to negotiate its claim under the Policy on its behalf.

68.

As a result of the JE Dunn Defendants' actions, Morrow has suffered damages in an amount to be determined at trial but not less than $362,758.00.

## COUNT FOUR

## ATTORNEYS' FEES AGAINST THE JE DUNN DEFENDANTS

69.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through 68 above as if fully set forth herein.

70.

Pursuant to the Agreement, in the event of a default thereunder, "[l]essee shall pay any costs of collection, including attorneys fees and expenses..." [*See* Exhibit A, ¶ 8].

71.

Thus, Plaintiff requests that it be awarded its collection costs and reasonable attorneys' fees arising out of the litigation of this matter.

## COUNT FIVE

## BREACH OF CONTRACT AGAINST ACE

72.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through 71 above as if fully set forth herein.

73.

Pursuant to General Endorsement F of the Policy and the Certificate of Liability Insurance,  Morrow is the Loss Payee.  [*See* Exhibits B and C].

20

74.

As Loss Payee, in the event that the Equipment was damaged while in the possession and use of the JE Dunn Defendants, Morrow was insured pursuant to Ace's Policy for its damages.

75.

As a result of the May 21, 2008 accident, the Equipment was damaged.

76.

ACE breached the terms of the Policy by failing to insure Morrow for the damage done to the Equipment as a result of the May 21, 2008 accident.

77.

As a result of ACE's breach of the terms of the Policy, Morrow has suffered damages in an amount to be determined at trial but in no event less than $362,758.00.

## **COUNT SIX**

## **BREACH OF CONTRACT PURSUANT TO O.C.G.A. § 9-2-20(b) AGAINST ACE**

78.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through 77 above as if fully set forth herein.

21

79.

Morrow is listed as the Loss Payee under the Policy that was entered into between the JE Dunn Defendants and ACE.

80.

As Loss Payee, ACE made a promise to the JE Dunn Defendants that it would insure Morrow against damage done to the Equipment while it was in JE Dunn Defendants' possession.

81.

By listing Morrow as the Loss Payee under the Policy, both the JE Dunn Defendants and ACE specifically intended that Morrow would be the beneficiary under the Policy in the event that the Equipment was damaged while in the possession of the JE Dunn Defendants.

82.

ACE breached its duty to Morrow, the third-party beneficiary under the Policy, by failing to include Morrow in the negotiation and adjustment of its property damage claim.

83.

ACE also breached its duty to Morrow, the third-party beneficiary under the Policy, by failing to insure Morrow for the damage that was done to the Equipment as a result of the May 21, 2008 accident.

22

84.

As a result of ACE's breach, Morrow has been damaged in an amount to be determined at trial but in no event less than $362,758.00.

## COUNT SEVEN

## ATTORNEYS' FEES AND EXPENSES PURSUANT TO O.C.G.A. § 13-6-11

85.

The Plaintiff hereby incorporates and re-alleges paragraph 1 through 84 above as if fully set forth herein.

86.

The JE Dunn Defendants and ACE have acted in bad faith, have been stubbornly litigious and have caused Morrow unnecessary trouble and expense by failing to insure Morrow for the damage done to the Equipment as a result of the May 21, 2008 accident, as required by the Agreement and the Policy.

87.

Therefore, Morrow is entitled to recover attorneys' fees and expenses under O.C.G.A. § 13-6-11 in an amount to be proven at trial.

**WHEREFORE**, the Plaintiff prays that:

(a)     The Plaintiff be awarded a judgment against the JE Dunn Defendants on Count One in an amount to be determined at trial;

23

(b)     The Plaintiff be awarded a judgment against the JE Dunn Defendants on Count Two in an amount to be determined at trial;

(c)     The Plaintiff be awarded a judgment against the JE Dunn Defendants on Count Three in an amount to be determined at trial;

(d)     The Plaintiff be awarded a judgment against the JE Dunn Defendants on Count Four in an amount to be determined at trial;

(e)     The Plaintiff be awarded a judgment against the Defendant ACE on Count Five in an amount to be determined at trial;

(f)     The Plaintiff be awarded a judgment against the Defendant ACE on Count Six in an amount to be determined at trial;

(g)     The Plaintiff be awarded a judgment against the Defendants on its Count Seven claim for attorneys' fees and expenses, pursuant to O.C.G.A. § 13-6-11;

(h)     The costs of this action be taxed against the Defendants; and

(i)     The Plaintiff be granted such other and further relief as this Court shall deem just and proper.

Respectfully submitted this 2nd day of July, 2014.


/s/ Curtis J. Romig
Curtis J. Romig
Georgia Bar No. 613990

24

Curtis.Romig@bryancave.com
James J. Gibson
Georgia Bar No. 415078
James.Gibson@bryancave.com

**Bryan Cave LLP**
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
(404) 572-6600 Telephone
(404) 572-6999 Facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2014, I served a true and correct

copy of Plaintiff's **Second Amended Complaint** with the Clerk of Court using the

CM/ECF system which will serve the below listed counsel of record via email:

Wayne D. Taylor
Michelle A. Sherman
Mozley, Finlayson, & Loggins, LLP
One Premiere Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342

Kevin H. Hudson
William C. Hayes
Hudson, Parrot, & Walker, LLC
3575 Piedmont Road, NE
15 Piedmont Center; Suite L100
Atlanta, Georgia 30305

/s/ Curtis J. Romig
Curtis J. Romig

Georgia Bar No. 613990